[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-13118

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

SEDERICK MAXWELL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:21-cr-20064-KMM-4

_____

Before NEWSOM, ANDERSON, and HULL, Circuit Judges.

PER CURIAM:

After pleading guilty, defendant Sederick Maxwell appeals his 100-month sentence for possession of a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1).  In 2020, Maxwell and four others who were convicted felons appeared in a music video holding firearms.  At sentencing, the district court, over Maxwell's objection, applied a 4-level increase in his offense level, pursuant to U.S.S.G. § 2K2.1(b)(1)(B), based on the eight firearms displayed in the video.  Alternatively, the district court stated that it would have imposed the same 100-month sentence regardless of the 4-level increase.

On appeal, Maxwell argues that the district court erred by applying U.S.S.G. § 2K2.1(b)(1)(B) because he possessed only one firearm and his codefendants' firearms possession was not attributable to him as relevant conduct.  Maxwell also argues for the first time that the government breached the plea agreement by requesting a sentence outside the advisory guidelines range calculated without the 4-level increase.

After careful review, we conclude any alleged error in increasing Maxwell's offense level under § 2K1.2(b)(1)(B) was harmless and the government did not breach the plea agreement. Thus, we affirm Maxwell's conviction and sentence.

# I.  BACKGROUND

## A.    Offense Conduct

In August 2020, law enforcement officers observed a music video posted on Instagram accounts of several members or associates of "the 13th Avenue/Blood Hound Gang," including defendant Maxwell.[1]  In the music video, some individuals were holding what appeared to be assault-style firearms.  Upon reviewing the raw footage, the officers were able to identify the individuals who were convicted felons and were shown holding firearms.  An officer also was able to identify positively the make and model of eight firearms in the video, all of which were capable of accepting a large capacity magazine.

At the time, Maxwell had, and was aware that he had, two prior felony convictions.  Maxwell was one of five individuals arrested.  In a post-arrest statement, Maxwell admitted to law enforcement that the firearm he possessed in the music video was real.

## B.    Indictment and Guilty Plea

A grand jury charged Maxwell and his four codefendants with one count each of possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1).  Maxwell was charged in Count

---

[1] Prior to sentencing, Maxwell denied that he was an associate or member of any gang, but he did not raise that objection at sentencing and he does not challenge this fact on appeal.

Four with possessing a "Romarm-Cugir/Century Arms, VT/Model: Micro Draco."

In May 2021, Maxwell pled guilty pursuant to a written plea agreement. In the plea agreement, Maxwell acknowledged that the district court would determine the advisory guidelines range relying in part on the presentence investigation report ("PSI") and was not bound to impose a sentence within that range. Maxwell also agreed that he was aware any estimate of the sentencing range by the government was "a prediction, not a promise" and was not binding on the government, the probation officer, or the court.

In exchange for Maxwell's guilty plea, the government agreed to make three recommendations at sentencing: (1) that the district court reduce Maxwell's offense level for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1, with certain conditions; (2) that Maxwell's relevant conduct was "one firearm which was in his possession and charged in Count Four of the Indictment"; and (3) that Maxwell's federal sentence run concurrent with any sentences imposed in his state court cases. The government reserved the right to inform the district court "of all facts pertinent to the sentencing process" and the right, "[s]ubject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, . . . to make any recommendation as to the quality and quantity of punishment."

## C.    PSI and Objections

The PSI assigned Maxwell a base offense level of 26, pursuant to U.S.S.G. § 2K2.1(a)(1), because his offense involved a

semiautomatic firearm that could accept a large capacity magazine and because he had committed the instant offense after sustaining at least two felony convictions for either a crime of violence or a controlled substance offense. The PSI added 4 levels under § 2K2.1(b)(1)(B) because Maxwell's offense involved eight firearms, for an adjusted offense level of 30.[2] The PSI noted that despite the parties' agreement that Maxwell was responsible for only the one firearm he possessed, § 2K2.1(b)(1)(B)'s 4-level increase applied. The PSI then reduced Maxwell's offense level by 3 levels under U.S.S.G. § 3E1.1(a) and (b) for acceptance of responsibility, for a total offense level of 27.

The PSI calculated Maxwell's criminal history category as IV based on a total of eight criminal history points. The PSI assigned six of those criminal history points to his separate 2011 Florida convictions for (1) possession of cocaine and cannabis with intent to sell, manufacture, or deliver within 1,000 feet of a childcare center or school, and (2) armed robbery with a firearm or deadly weapon and attempted felony murder with a deadly weapon or aggravated battery. The second set of charges arose out of a robbery in which the victim was shot three times and was hospitalized. While Maxwell's drug crimes and his armed robbery/attempted felony murder crimes were committed months apart, Maxwell received eight-year concurrent sentences in

---

[2] Under § 2K2.1(b)(1), the district court increases a defendant's offense level by 4 levels if the offense involved between 8 and 24 firearms. *See* U.S.S.G. § 2K2.1(b)(1)(B).

both cases.  The PSI added two criminal history points, pursuant to U.S.S.G. § 4A1.1(d), because Maxwell committed the instant firearm offense while serving probation for these convictions.

With a total offense level of 27 and a criminal history category of IV, Maxwell's initial advisory guidelines range was 100 to 125 months.  However, because his statutory maximum term was ten years under 18 U.S.C. § 924(a)(2), Maxwell's advisory guidelines range became 100 to 120 months.

Relevant to this appeal, Maxwell objected to the 4-level increase under § 2K2.1(b)(1)(B).  Maxwell argued that he was not responsible for eight firearms because his offense involved only the firearm he possessed, he was not charged with conspiracy, and his relevant conduct did not include other convicted felons' possession of firearms.  Maxwell pointed out that there was no evidence he knew the other individuals in the music video were convicted felons.  Maxwell represented that he had discussed the 4-level increase with the prosecutor, who "agree[d] with the defense objection and w[ould] not submit evidence to support the enhancement."

The probation officer responded to Maxwell's objection, stating that the district court was not bound by the parties' stipulation to one firearm.  The probation officer explained that relevant conduct under U.S.S.G. § 1B1.3(a)(1) included all acts and omissions taken in the scope of jointly undertaken criminal activity, whether or not charged as a conspiracy.  The probation officer submitted that Maxwell's conspiracy and agreement to

appear in the music video with his codefendants, all of whom "possessed firearms knowing they had all previously been convicted of a felony crime," was the basis for his relevant conduct.

## D.    Sentencing

At sentencing, the district court overruled Maxwell's objection to the 4-level increase under § 2K2.1(b)(1)(B). The district court found that the seven other firearms were attributable to Maxwell as relevant conduct. The district court expressed, however, that if it was wrong on that point, it would still give Maxwell the same sentence, stating as follows:

> If I'm wrong, I'm wrong, and the Eleventh Circuit will tell me I'm wrong as they have in the past.
>
> And I would say that for everybody's benefit, for the sake of judicial resources, that I've looked at the PSI carefully. I looked at the letters that you sent that I got today, I've looked at the 3553(a) factors, including his criminal history; not only relying on his criminal history, but the nature and circumstances of the instant offense, the need to promote respect for the law, and to provide adequate deterrence. *And so the sentence that I would give today would be the same sentence post-Booker as a reasonable sentence, regardless of the calculation of the guidelines with the additional points for multiple weapons.* So just so that everybody understands, that I'm imposing a sentence that I believe is correct under the guidelines; but I'm also

imposing a sentence in the alternative under post-Booker reasonableness standard.

(Emphasis added.)  The district court adopted the PSI's advisory guidelines calculations and found that the advisory guidelines range was 100 to 120 months.

Maxwell requested an 80-month sentence, in the middle of the 70- to 87-month range if the 4-level increase had not applied.  In mitigation, Maxwell stressed that he recently was a victim of a drive-by shooting, for which he had undergone several surgeries and still suffered medical issues.

The government requested a 100-month sentence given the nature and circumstances of Maxwell's firearm offense and his history and characteristics.  The government emphasized that when Maxwell possessed the firearm in the music video, he was on probation for very serious state offenses, including attempted felony murder, armed robbery, and narcotics trafficking and based on discussions with the state attorney's office, Maxwell faced a lengthy sentence for his probation violations.  In compliance with the plea agreement, the government requested that Maxwell's sentence run concurrent with Maxwell's state court sentences.

The district court reviewed Maxwell's criminal history as reflected in the PSI, including his prior concurrent eight-year state prison sentences and his pending probation violations in state court.  The government confirmed that because Maxwell's prior state convictions involved a shooting in which someone was injured, he faced a mandatory minimum sentence of ten years in

state court for a new law violation.  The district court stated that it would not run Maxwell's federal sentence concurrently, explaining that Maxwell should not be rewarded for committing another offense while on probation.  The district court also observed that Maxwell's prior state sentences of eight years were "probably why he's wound up in federal court" and that if those sentences had been longer, "we might have nipped this in the bud."

The district court stated that it had considered the statements of the parties, the PSI which contained the advisory guidelines range, and the 18 U.S.C. § 3553(a) factors and imposed a sentence of 100 months, followed by three years of supervised release.  Maxwell renewed his objection to the district court's application of § 2K2.1(b)(1)(B)'s 4-level increase in his offense level.

## II.  DISCUSSION

On appeal, Maxwell argues that: (1) the district court erred in applying the 4-level multiple-firearm increase under § 2K2.1(b)(1)(B), and (2) the government breached the plea agreement when it recommended a sentence outside 80 to 87 months, the sentencing range that did not include the 4-level increase.  We address each issue in turn.

### A.    Multiple Firearm Increase Under § 2K2.1(b)(1)(B)

Maxwell advances the same argument he made at sentencing—that U.S.S.G. § 2K2.1(b)(1)(B)'s 4-level increase does not apply because his 18 U.S.C. § 922(g) offense involved the possession of only one firearm, and no evidence was presented at his sentencing that his codefendants' possession of the other seven

firearms was relevant conduct as defined in U.S.S.G. § 1B1.3(a)(1)(A) or (B). In particular, Maxwell contends there was no evidence that he aided, abetted, counseled, commanded, induced, procured, or willfully caused any of the other individuals to possess a firearm or to be in the music video or, alternatively, no evidence of jointly undertaken criminal activity by him and the others in the video.

The problem for Maxwell is we need not review a purported guidelines calculation error if the district court "has already told us that it would impose exactly the same sentence, a sentence we would be compelled to affirm." *United States v. Grushko*, 50 F.4th 1, 18 (11th Cir. 2022) (quotation marks omitted), *cert. denied*, 143 S. Ct. 2594 (2023); *see also United States v. Keene*, 470 F.3d 1347, 1350 (11th Cir. 2006). Under our precedent, a guidelines calculation error is harmless when (1) the district court states that it would have imposed the same sentence, even if it had decided the guidelines issue in the defendant's favor, and (2) assuming an error occurred and the lower guidelines range applied, the sentence is substantively reasonable. *Grushko*, 50 F.4th at 18; *Keene*, 470 F.3d at 1349.

Here, the district court, in imposing the 100-month sentence, stated on the record that it would have imposed the same sentence even if the § 2K2.1(b)(1)(B) 4-level enhancement did not apply. Further, as explained below, Maxwell's 100-month sentence, even if an upward variance from the 70- to 87-month

guidelines range without the 4-level increase, is substantively reasonable.

## B.    Substantive Reasonableness

More specifically, if the district court had sustained Maxwell's objection to the application of § 2K2.1(b)(1)(B)'s 4-level increase, Maxwell's total offense level would have been lowered to 23, resulting in an advisory guidelines range of 70 to 87 months. *See* U.S.S.G. Ch. 5, Pt. A (Sentencing Table). The district court's sentence of 100 months' imprisonment would have been a 13-month upward variance.

"We review the substantive reasonableness of a sentence for abuse of discretion, considering the totality of the circumstances." *United States v. Oudomsine*, 57 F.4th 1262, 1266 (11th Cir. 2023). The party challenging the sentence bears the burden of establishing that it is unreasonable "in light of the entire record, the [18 U.S.C.] § 3553(a) factors, and the substantial deference afforded sentencing courts." *United States v. Rosales-Bruno*, 789 F.3d 1249, 1256 (11th Cir. 2015). Although in choosing the sentence, the district court must consider the § 3553(a) factors, the district court is not required to address each factor separately. *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008). Rather, the district court's acknowledgment that it has considered the defendant's arguments and the factors generally will suffice. *Id.* Moreover, the weight to be given each § 3553(a) factor lies within the district court's sound discretion, and the district court may assign great weight to one factor over others. *Rosales-Bruno*, 789 F.3d. at 1254.

The district court also has wide discretion to impose an upward variance based on the § 3553(a) factors.  *United States v. Butler*, 39 F.4th 1349, 1355 (11th Cir. 2022).  If the district court determines that a variance is warranted, it "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance."  *Gall v. United States*, 552 U.S. 38, 50 (2007).  While we may consider the extent of the variance, we do not require extraordinary circumstances to justify a sentence outside the advisory guidelines range or presume that such a sentence is unreasonable.  *Id.* at 47; *see also United States v. Irey*, 612 F.3d 1160, 1186-87 (11th Cir. 2010) (en banc).  "We will vacate a defendant's sentence as substantively unreasonable only if we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case."  *Oudomsine*, 57 F.4th at 1266 (quotation marks omitted).

Given the alternative 70- to 87-month range, the § 3553(a) factors, and the totality of the circumstances, Maxwell has not shown his 100-month sentence is substantively unreasonable.  In choosing the 100-month sentence, the district court stated that it had considered the § 3553(a) factors and the parties' arguments, carefully reviewed the PSI, and read the letters sent in support of Maxwell.  The district court explicitly cited as pertinent factors the nature and circumstances of Maxwell's offense, the need to promote respect for the law, and the need to provide adequate

deterrence. The district court also stated that it had considered Maxwell's criminal history, but clarified that it did not rely solely on his criminal history. The district court's comments during the hearing indicate that it was concerned that Maxwell's prior eight-year state sentences had not adequately deterred him from committing the instant federal firearm offense.

Given Maxwell's prior criminal history, which included serious felonies that resulted in gunshot injuries to the victim, the fact that Maxwell was undeterred by his previous eight-year state sentences, committed the instant offense while still on state probation, and, as part of his current federal firearm offense, appeared in a music video with members of a gang holding a semiautomatic firearm fitted with a large capacity magazine, we cannot say a decision to vary upward by 13 months was substantively unreasonable. We note, also, that Maxwell's 100-month sentence is below the 120-month statutory maximum, another indication it is reasonable. *See United States v. Dougherty*, 754 F.3d 1353, 1362 (11th Cir. 2014).

## C.    Breach of Plea Agreement

Although Maxwell did not raise this issue in the district court, on appeal he argues that the government breached the plea agreement by requesting a 100-month sentence, above the 70- to 87-month range Maxwell says the parties contemplated.

Ordinarily, we review *de novo* whether the government has breached a plea agreement. *United States v. Malone*, 51 F.4th 1311, 1318 (11th Cir. 2022). Where, as here, a defendant fails to object to

the purported breach before the district court, our review is for plain error. *Id.* Plain error occurs where: (1) there is an error; (2) that is plain; (3) it affects the defendant's substantial rights; and (4) it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.* at 1319.

For an error to be plain, it must be "clear or obvious." *United States v. Sosa*, 782 F.3d 630, 637 (11th Cir. 2015). "In the context of plea agreement breaches, the Supreme Court has advised that not all breaches will be clear or obvious, such as when the drafting of an agreement leaves the scope of the government's commitments open to doubt." *Id.* (quotation marks omitted, alteration adopted).

"[T]he government breaches a plea agreement when it fails to perform the promises on which the plea was based." *Malone*, 51 F.4th at 1319 (quotation marks omitted). "In determining whether the government has breached a plea agreement, we must first determine the scope of the government's promises." *Id.* (quotation marks omitted, alteration adopted). We look to the plea agreement's plain language, and the "plea agreement's unambiguous meaning controls." *Id.* at 1319-21, *see also Sosa*, 782 F.3d at 637. "[W]e ask whether the government's conduct conflicted with the defendant's reasonable understanding of the government's promises when he entered his guilty plea." *Malone*, 51 F.4th at 1319. Our inquiry applies an objective standard, and we do not read "the agreement in a hyper-technical or rigidly literal manner." *United States v. Hunter*, 835 F.3d 1320, 1324 (11th Cir. 2016) (quotation marks omitted).

Here, in exchange for Maxwell's agreement to plead guilty, the government promised to recommend that Maxwell's relevant conduct was "the one firearm which was in his possession and charged in Count Four of the Indictment," that Maxwell receive an acceptance-of-responsibility reduction, and that his sentence run concurrent to his state sentences. None of these promises requires the government to recommend a particular sentence, much less recommend a sentence within a particular guidelines range.

Maxwell essentially contends that implicit within the government's promise to recommend only one firearm as relevant conduct, was another promise not to ask for a sentence outside the advisory guidelines range that would have been calculated using only one firearm. But this understanding of the government's promise is not supported by the plea agreement's plain language and is not objectively reasonable.

In the plea agreement, the government explicitly reserved the right to recommend any "quality or quantity of punishment" unless it expressly agreed to a sentencing recommendation set forth in the agreement. As noted, there was no explicit promise in the plea agreement to recommend a particular sentence or a particular guidelines range. Further, Maxwell acknowledged in the plea agreement that (1) the district court would determine the advisory guidelines range, (2) any estimate by the government of the probable sentencing range was only a prediction and not a promise and was not binding on the government or the district court; and (3) that any recommendation made by the government

was not binding on the district court.  In light of these acknowledgments and the government's express promises in the plea agreement, there is no merit to Maxwell's claims that an advisory guidelines range of 70 to 87 months "was agreed to in the plea agreement" or that Maxwell reasonably understood that the government would recommend a sentence within that range.

The record shows the government complied with all three promises at the sentencing hearing, including its promise about relevant conduct.  As to the relevant conduct promise in particular, the government agreed with Maxwell that his relevant conduct was the single firearm he was charged with possessing and declined to present evidence supporting the probation officer's position in the PSI that Maxwell's relevant conduct included the other seven firearms seen in the music video.  The government did not plainly breach the plea agreement when it sought a 100-month sentence, at the low end of the advisory guidelines range, as determined by the district court.

## III.  CONCLUSION

For these reasons, we affirm Maxwell's firearm conviction and 100-month sentence.

**AFFIRMED.**