[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————————

No. 23-14234

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

BELAS SHELSON ROSIER,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:23-cr-80045-AMC-1

————————————————

Before NEWSOM, LUCK, and ANDERSON, Circuit Judges.

PER CURIAM:

Belas Shelson Rosier challenges his conviction and sentence, asserting that the district court erred by admitting inadmissible evidence at trial and by imposing a substantively unreasonable sentence. After careful review, we affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

After officers found drugs at Rosier's home during the successful execution of a search warrant, a superseding indictment charged him with two counts for drug crimes. Count one charged him with conspiring to possess with intent to distribute a controlled substance—400 grams or more of a mixture containing fentanyl and 500 grams or more of a mixture containing cocaine. Count two charged him with possession with intent to distribute a controlled substance—400 grams of more of a mixture containing fentanyl, 10 grams or more of a fentanyl analogue, and a mixture containing cocaine.

At the jury trial, Detective Jerrell Negron of the West Palm Beach Police Department was tendered and qualified as an expert in street-level drug trafficking in South Florida. Before he testified, the district court discussed the government's planned introduction of code word testimony with counsel. Counsel for Rosier said that as long as the government "la[id] the proper foundation, [it was] obviously entitled to present the code word testimony" and that

"we'll object if" Detective Negron's "testimony goes beyond that." However, after Detective Negron started testifying—but before he reached the discussion of the code words—Rosier's counsel raised to the district court that some of his testimony dealing with code-words would be inadmissible "because it's nonspecific for an expert, and it's something the jury can interpret on their own." The district court disagreed, instructing Rosier's counsel to raise objections to any questions as they arose.

After Detective Negron was tendered as an expert without objection, the district court instructed the jury that "[a]s with any other witness's testimony, you must decide for yourself whether to rely upon the opinion." During Detective Negron's testimony, the government introduced evidence of text messages from the phone of a known drug dealer, Justin Jordan Garth, and a person Garth's phone listed as "Bizly." At points during his testimony, Detective Negron testified that Rosier was the person who sent the messages from the "Bizly" phone (over objections from Rosier's counsel), or that he believed Rosier sent the messages.

Throughout his testimony, Detective Negron opined on the meaning of many of the words in the text messages, explaining that they referred to code words for fentanyl and cocaine, and that the messages revealed drug trade between Garth and "Bizly." For example, on October 4, 2021, Garth texted "Bizly," "Need another 4," to which "Bizly" replied with two texts: "I had half shit already gone but I'll call my people and see if he got more give me a few fam" and "I'll let you know." Garth followed up, "Ok LMK," and

4                    Opinion of the Court                    23-14234

"Bizly" replied, "Got you."  Garth then said, "I'll grab 9 if u running low," "Bizly" replied, "Ok," before following up around an hour later, "Yow I got the 9 for you" and "I'm ready."  At this point Garth responded, "Ok ill b by the spot in at 5"; he later texted "6" and "[s]till running around," to which "Bizly" responded, "No problem."

Concerning that exemplar text exchange, Negron opined that the "need another 4" message from Garth was a request for four ounces of fentanyl.  The "Bizly" response of "I had half shit already gone" meant that "Bizly" had already sold half a kilo.  And as to the later exchange where "Bizly" responded, "Got you," Garth said, "I'll grab 9 if you running low," and "Bizly" said, "Yow I got the 9 for you," Detective Negron opined that this was a reference to nine ounces of fentanyl because Garth "kn[e]w[] that his source of supply [was] low."

The government also offered circumstantial evidence that "Bizly" was, in fact, Rosier.  The "Bizly" number's subscriber and account name listed Rosier.  The phone number was also connected to Rosier's address.  "Bizly" texted on December 11, "Today is my birthday," and December 11, 1991 is the birth date listed on Rosier's driver's license.

Other witnesses testified about evidence of drugs connected to Rosier.  For example, Detective Raphael Chaves testified that the investigators found many bags of drugs at Rosier's home. Homeland Security Investigations Special Agent Anderson Sullivan testified that testing of the drugs found at Rosier's home revealed

524.36 grams of fentanyl, 43.99 grams of fentanyl analogue, and 286.10 grams of cocaine. Special Agent Sullivan also testified there had been "approximately 1,250" texts or calls between "Bizly" and Garth from October 4, 2021 through March 9, 2022.

The jury convicted Rosier of both counts. Specifically, as to count one, it found him guilty of conspiring to possess with intent to distribute a controlled substance. The jury further specifically found that he conspired to possess with an intent to distribute 400 grams or more of a mixture containing fentanyl but less than 500 grams of a mixture containing cocaine (that latter amount was less than the 500 grams or more of a mixture containing cocaine that the superseding indictment had charged). And as to count two, the jury found Rosier guilty of possessing with intent to distribute 400 grams or more of a mixture containing fentanyl, 10 grams or more of a mixture containing fentanyl analogue, and a mixture containing cocaine. Rosier moved for a judgment of acquittal and for a new trial, and the district court denied both motions.

At the sentence hearing, the district court calculated the total offense level at thirty-four and the criminal history category at one, resulting in a guideline sentence range between 151 and 188 months' imprisonment. Rosier sought a low-end sentence in light of his "no prior criminal history" and his status as a "good father" with "a tight-knit family."

The district court sentenced Rosier to 180 months' imprisonment followed by five years' supervised release for each count,

to be served concurrently.  In reaching the sentence, the district court noted that it considered the 18 U.S.C. section 3553(a) factors and that it "considered the statements of all parties."  The district court emphasized "the overwhelming evidence of guilt," recalled the "truly staggering" quantity of drugs in the case, and noted that "[t]he degree of sophistication" in Rosier's drug operation in the garage that "adjoin[ed] [his] house with minor children" was "exceedingly concerning."  The district court observed that fentanyl "is an extremely deadly substance" that is "a scourge on [the South Florida] community," which meant its presence "warrant[ed] general deterrence along with promot[ion of] respect for the law."  Under the circumstances, the district court concluded "a significant sentence is warranted."

Rosier objected to the district court's finding of facts and to the sentence's procedural and substantive reasonableness.  The district court entered the judgment and Rosier appealed.

## STANDARD OF REVIEW

We review "preserved assertions of error" for harmlessness. *See United States v. Pon*, 963 F.3d 1207, 1227 (11th Cir. 2020).  We review a sentence's substantive reasonableness for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 40–41 (2007).

## DISCUSSION

On appeal Rosier raises two challenges to his conviction and sentence:  (1) Detective Negron's testimony contained inadmissible improper expert opinions on Rosier's mental state in violation

of Federal Rule of Evidence 704(b), and (2) his sentence was substantively unreasonable. We are unpersuaded by either challenge.

*A.*

Rosier first asserts that Detective Negron's testimony about the meaning of the text messages between Garth and Rosier was inadmissible under rule 704(b).[1] We needn't decide whether the admission of Detective Negron's testimony was error because we are persuaded any error was harmless beyond a reasonable doubt considering the overwhelming evidence of guilt produced by the government at trial. *See Pon*, 963 F.3d at 1228.

Under Federal Rule of Criminal Procedure 52(a), "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." Fed. R. Crim. P. 52(a). We conduct a "'harmless error' inquiry" in order "to determine whether the error was prejudicial" by "engag[ing] in a specific analysis of the district court record." *United States v. Olano*, 507 U.S. 725, 734 (1993). There are two standards for harmless error review—a constitutional standard and a nonconstitutional standard, and "a holding that a constitutional error is harmless necessarily means that it is also harmless if it happens to be nonconstitutional error." *Pon*, 963 F.3d at 1228. Under that higher, constitutional standard, an "error

---

[1] The government argues plain error review should apply because Rosier has raised this issue for the first time on appeal. But we assume, without deciding, Rosier preserved the challenge by raising the issue of the code word interpretation at the district court because his argument fails either way under harmless error review.

is harmless if the government proves beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained"—meaning "that error [was] unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record." *Id.* at 1227 (cleaned up).

Here, the overwhelming evidence of Rosier's guilt leaves us convinced beyond a reasonable doubt that any error by admission of Detective Negron's interpretive opinions was harmless. Even without Detective Negron's interpretative opinions, the jury would have had access to the extensive communications between Garth and "Bizly" that were entered into evidence. The jury heard from Detective Negron that Garth was a drug dealer. And the jury heard from Special Agent Sullivan that there had been "approximately 1,250" texts or phone calls between "Bizly" and Garth.

Those messages included exchanges that a reasonable jury could determine were about drug dealing. For instance, Garth said, "Need another 4," with responses from "Bizly" such as, "I had half shit already gone but I'll call my people and see if he got more give me a few fam" and "I'll let you know." Or messages from Garth such as, "I'll grab 9 if u running low," and "Bizly" responding, "Ok," "Yow I got the 9 for you," and "I'm ready"

The government also offered evidence that Rosier was the person using the "Bizly" number. His name was the "Bizly" number's subscriber and account name. The number was connected to Rosier's address. And "Bizly" texted on December 11, "Today is my birthday," which evidence showed is Rosier's birthday.

In addition, the government provided evidence of drugs found in Rosier's house. Detective Chaves testified that the investigators found many bags of drugs at Rosier's home. In addition, Special Agent Sullivan explained that the testing of the drugs found at Rosier's home revealed 524.36 grams of fentanyl, 43.99 grams of fentanyl analogue, and 286.10 grams of cocaine.

In short, the jury heard evidence that a phone in Rosier's name sent hundreds of communications to a known drug dealer over the span of months, that the user of the phone had the same birthday as Rosier, and that hundreds of grams of fentanyl and cocaine were discovered inside Rosier's home garage. Everything the government produced at trial provides overwhelming evidence of Rosier's guilt beyond a reasonable doubt—with or without Detective Negron's interpretation opinion testimony.

Rosier claims that "[b]ut for the testimony of Det[ective] Negron, the jury would not [have] know[n] the communication between . . . Rosier and Garth was about drugs," which made Detective Negron's testimony "prejudic[ial]," and "substantial[ly]" so. To be sure, Detective Negron did say he only understood the meanings "[a]fter reading the entire conversation as it is" and also "reviewing the street terminology." But it doesn't take an expert witness, in light of all the other evidence tying Rosier to drug dealing, to read and hear about these hundreds of text messages and conclude beyond a reasonable doubt that they were part of a conspiracy to possess drugs with an intent to distribute them.

In the end, we are convinced that any error in admitting Detective Negron's interpretation opinion testimony was "unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record," and that error (if any) was harmless beyond a reasonable doubt considering the overwhelming evidence of Rosier's guilt. *See id.* at 1227–28.

### B.

Rosier also argues that his sentence was substantively unreasonable because "[t]he [district] court focused solely upon the amount of drugs involved." We disagree.

A district court can abuse its discretion if it fails to afford consideration to relevant factors that were due significant weight, significantly weighs improper or irrelevant factors, or commits a clear error of judgment by weighing the factors unreasonably. *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010). We will only reverse a sentence as substantively unreasonable "if we are left with the definite and firm conviction that the [d]istrict [c]ourt committed a clear error of judgment in weighing the factors by arriving at a sentence outside the range of reasonable sentences dictated by the facts of the case." *United States v. Alberts*, 859 F.3d 979, 985 (11th Cir. 2017) (cleaned up).

When assessing the sentence's substantive reasonableness, we are mindful that "the weight to be accorded any given [section] 3553(a) factor is a matter committed to the sound discretion of the district court, and we will not substitute our judgment in weighing the relevant factors." *United States v. Kuhlman*, 711 F.3d 1321, 1327

(11th Cir. 2013) (cleaned up and citation omitted).  The district court is "permitted to attach 'great weight' to one factor over others." *United States v. Shaw*, 560 F.3d 1230, 1237 (11th Cir. 2009) (citing *Gall*, 522 U.S. at 57; *United States v. Pugh*, 515 F.3d 1179, 1192 (11th Cir. 2008)).  And we "ordinarily expect[]" a sentence within the guideline range to be reasonable.  *United States v. Castaneda*, 997 F.3d 1318, 1332 (11th Cir. 2021).

Here, the district court adequately stated its reasons for imposing a sentence of 180 months' imprisonment.  For one thing, the district court "acknowledge[d] that it considered the defendant's arguments" by saying it "considered the statements of all parties," and the district court acknowledged it considered the section 3553(a) factors, which means that its explanation was sufficient to adequately explain the reason for imposing the within-guideline range sentence.  *United States v. Grushko*, 50 F.4th 1, 17–18 (11th Cir. 2022) (citing *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008)).

Moreover, the district court provided reasons that reflect consideration of several of the section 3553(a) factors:  the nature and circumstances of the offense, the offense's seriousness, and the need for deterrence of criminal conduct.  *See* 18 U.S.C. section 3553(a)(1)–(2).  The district court explained that this case involved a "drug quantity" that was "truly staggering" and that "[t]he degree of sophistication with respect to the manufacturing that was going on in [Rosier's] garage, adjoining [his] house with minor children" was "exceedingly concerning."

This analysis—on top of the district court's acknowledgement that it found the sentence "to be reasonable and appropriate having considered all of the [section] 3553(a) factors"—satisfies us that the district court "considered the parties' arguments and ha[d] a reasoned basis for exercising [its] own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007) (citing *United States v. Taylor*, 487 U.S. 326, 336–37 (1988)). It didn't, as Rosier claims, "focus[] solely upon the amount of drugs involved" when it imposed this within-guideline-range sentence.

**AFFIRMED.**