**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————

No. 23-13871

Non-Argument Calendar

————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

PHILLIP TIMOTHY HOWARD,

*Defendant- Appellant.*

————————————

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 4:22-cr-00043-AW-MAL-1

————————————

————————————

No. 24-10042

Non-Argument Calendar

————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

PHILLIP T. HOWARD,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 4:22-cr-00043-AW-MAL-1

_____

Before NEWSOM, ABUDU, and ANDERSON, Circuit Judges.

PER CURIAM:

Phillip Howard appeals both his conviction and sentence resulting from his guilty plea to racketeering in violation of 18 U.S.C. § 1962(c). He argues that his guilty plea was invalid because it was not supported by a sufficient factual basis and because it was not knowing and voluntary. He further argues that his 168-months' imprisonment sentence is both procedurally and substantively unreasonable. He asserts that the district court improperly calculated his sentence because it used relevant conduct to which he did not plead guilty and inaccurate calculations of actual loss to determine his offense level. Howard also argues that the district court erred in imposing restitution in an amount equal to actual loss, and that it erred in imposing a forfeiture money judgment in the amount of $10,651,941.40. For the reasons we'll explain below, we **AFFIRM** the district court on all grounds.

The facts of the case are known to the parties, and we repeat them here only as necessary to decide the case.

# I

## A

When, as here, a defendant fails to challenge the validity of a guilty plea in the district court, we review for plain error. *United States v. Puentes-Hurtado*, 794 F.3d 1278, 1285 (11th Cir. 2015). The defendant bears the burden of showing "that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected [his] substantial rights; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Hill*, 119 F.4th 862, 866 (11th Cir. 2024) (quotation omitted).

A district court must determine that there is a factual basis for a guilty plea before accepting it. Fed. R. Crim. P. 11(b)(3). Whether the facts were sufficient to support the plea depends upon "whether the trial court was presented with evidence from which it could reasonably find that the defendant was guilty." *United States v. Frye*, 402 F.3d 1123, 1128 (11th Cir. 2005) (quotation omitted). There need not be "uncontroverted evidence of guilt." *United States v. Owen*, 858 F.2d 1514, 1516–17 (11th Cir. 1988).

Generally, an error that affects substantial rights is one that is "prejudicial," in that it "affected the outcome of the district court proceedings." *United States v. Olano*, 507 U.S. 725, 734 (1993). A defendant who seeks to reverse "his conviction after a guilty plea, on the ground that the district court committed plain error under Rule 11 must show a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez*

*Benitez*, 542 U.S. 74, 83 (2004). "A variance from the requirements of [Rule 11] is harmless error if it does not affect substantial rights." *Id.* at 80 (quoting Fed. R. Crim. P. 11(h)).

To establish that a defendant has committed a RICO violation under 18 U.S.C. § 1962(c), the government must prove: "(1) the existence of an enterprise; (2) that the enterprise affected interstate commerce; (3) that the defendants were employed by or associated with the enterprise; (4) that the defendants participated, either directly or indirectly, in the conduct of the affairs of the enterprise; and (5) that the defendants participated through a pattern of racketeering activity." *United States v. Starrett*, 55 F.3d 1525, 1541 (11th Cir. 1995) (footnote omitted). A "pattern of racketeering activity" refers to at least two acts of racketeering activity within the span of ten years. *Id.*

Wire fraud in violation of 18 U.S.C. § 1343 qualifies as a "racketeering activity." 18 U.S.C. § 1961(1)(B). To convict a defendant for wire fraud, the government must prove that he (1) intentionally participated in a scheme to defraud and (2) utilized interstate mails or wires in furtherance of that scheme. *United States v. Maxwell*, 579 F.3d 1282, 1299 (11th Cir. 2009). "A scheme to defraud requires proof of a material misrepresentation, or the omission or concealment of a material fact calculated to deceive another out of money or property." *Id.* And "[a] misrepresentation is material if it has a natural tendency to influence, or [is] capable of influencing, the decision maker to whom it is addressed." *Id.* (quotation marks omitted).

Here, the statement of facts attached to Howard's plea agreement contains facts sufficient for the district court to "reasonably find that the defendant was guilty." *Frye*, 402 F.3d at 1128. He has admitted to the following: being the founder and president of Howard & Associates and The Cambridge Entities; hiring as investment manager and then actively concealing the past of D.W.R., a convicted felon barred by the SEC from engaging in investment work; convincing former NFL players to invest over $4 million with The Cambridge Entities; and misrepresenting the nature of clients' investments and returns. The district court, considering these facts, found that the plea had a sufficient factual basis. We hold that the district court did not commit plain error in accepting the plea.

**B**

The Due Process Clause requires that a guilty plea be knowing and voluntary. *McCarthy v. United States*, 394 U.S. 459, 466 (1969). To determine whether the waiver is knowing and voluntary, a district court accepting a plea of guilty must comply with the three "core objectives" of Rule 11 by ensuring that: (1) the guilty plea is free from coercion; (2) the defendant understands the nature of the charges; and (3) the defendant understands the consequences of his plea. *United States v. Presendieu*, 880 F.3d 1228, 1238 (11th Cir. 2018). To comply with the first core principle, Rule 11(b)(2) requires the court to ensure that the plea did not result from force, threats, or promises not included in the plea agreement. Fed. R. Crim. P. 11(b)(2). Whether the court has complied with the second core principle depends on a variety of factors,

including the complexity of the offense and the defendant's intelligence and education. *Presendieu*, 880 F.3d at 1238. To comply with the third core principle, the district court must inform the defendant of the rights that he gives up by pleading guilty, the court's authority to impose certain punishments, and the possibility of a perjury prosecution for false statements during the plea colloquy. *United States v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005); *see also* Fed. R. Crim. P. 11(b)(1). The district court must address the defendant personally to ensure he understands the nature of the charges and the potential consequences of a guilty plea. *United States v. Lewis*, 115 F.3d 1531, 1535 (11th Cir. 1997); Fed. R. Crim. P. 11(b)(1).

Howard's plea was knowing and voluntary. He signed a written plea agreement that explicitly detailed the conduct to which he was admitting and the rights he was waiving. At Howard's change-of-plea hearing, the court addressed him personally to ensure that he understood his rights, the rights he would be waiving by pleading guilty, and the nature of the charge. Howard thereupon affirmed his understanding and confirmed that he had "just signed" the plea bargain "[i]n the courtroom" after having "seen a copy of it." He moreover affirmatively stated multiple times that he was guilty of the conduct outlined in the statement of facts. The most he could say for himself was that he did not intend for the victims "not to have money at the end of their investment." However, that is irrelevant here given his concession that "I did not inform them, and I had a duty to do that and I didn't do that." After clarifying one last time that Howard wanted to plead guilty, the

district court judge finally noted that Howard understood the consequences and was "well-presented by counsel here" before accepting his guilty plea. We find no constitutional defect here.

## II

### A

We review the procedural reasonableness of a sentence for abuse of discretion. *United States v. Barrington*, 648 F.3d 1178, 1194 (11th Cir. 2011). The district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in determining the sentence, or makes clearly erroneous factual findings. *Id.* We review a district court's interpretation of the Sentencing Guidelines de novo, and its determination of the loss amount for clear error. *Maxwell*, 579 F.3d at 1305.

However, when a party fails to make specific objections at sentencing after being given an opportunity to do so by the district court, challenges to the sentence on appeal will be reviewed only for plain error. *United States v. Ramirez-Flores*, 743 F.3d 816, 821 (11th Cir. 2014). To preserve an objection, a defendant "must raise that point in such clear and simple language that the trial court may not misunderstand it." *Id.* (quotation marks omitted). Additionally, if a defendant fails to adequately brief an issue on appeal, it is considered abandoned. *United States v. Cunningham*, 161 F.3d 1343, 1344 (11th Cir. 1998). This includes mere "passing reference[s]" made in the initial brief. *United States v. Brown*, 125 F.4th 1043, 1054 (11th Cir. 2025).

A district court must consult the Sentencing Guidelines and take them into account when determining a defendant's sentence. *United States v. Booker*, 543 U.S. 220, 264 (2005). The Sentencing Guidelines allow the consideration of relevant conduct to determine the guideline range. U.S.S.G. § 1B1.3(b). Under the 2024 and 2025 Guidelines, "[r]elevant conduct does not include conduct for which the defendant was criminally charged and acquitted in federal court, unless such conduct also establishes, in whole or in part, the instant offense of conviction." *Id.* § 1B1.3(c).

When calculating the guideline range, a district court may rely on factual findings based on facts admitted during a defendant's guilty plea, undisputed statements in the presentence investigation report ("PSI"), or evidence presented during the sentencing hearing. *United States v. Matthews*, 3 F.4th 1286, 1289 (11th Cir. 2021). Undisputed statements in a defendant's PSI are deemed admitted. Fed. R. Crim. P. 32(i)(3)(A); *United States v. Beckles*, 565 F.3d 832, 844 (11th Cir. 2009). If a defendant challenges one of the factual bases of his sentence, the government has the burden of proving the disputed fact by a preponderance of the evidence. *United States v. Aguilar-Ibarra*, 740 F.3d 587, 592 (11th Cir. 2014).

The government also has the burden of proving loss amounts attributed to the defendant by a preponderance of the evidence. *United States v. Cavallo*, 790 F.3d 1202, 1232 (11th Cir. 2015). And "a sentencing court need only make a reasonable estimate of the loss, given the available information." *Id.* (quotation omitted). "The court, however, cannot merely speculate as to the proper

amount of loss, and, if the amount suggested by the government is contested, the government must support its estimate with reliable and specific evidence." *United States v. Yeager*, 331 F.3d 1216, 1224 (11th Cir. 2003) (citation modified). Additionally, all relevant conduct may be considered in determining the loss amount if the government can prove the conduct by a preponderance of the evidence. *United States v. Hamaker*, 455 F.3d 1316, 1336 (11th Cir. 2006); *see also Cavallo*, 790 F.3d at 1233-34. And the district court may hold all participants in a conspiracy responsible for the losses resulting from the reasonably foreseeable acts of co-conspirators in furtherance of the conspiracy. *United States v. Hunter*, 323 F.3d 1314, 1319 (11th Cir. 2003). A district court should deduct any losses returned to the victims when calculating the total loss amount for sentencing purposes, but any error in failing to do so is harmless where the deduction would not alter the threshold amount level for triggering the upward adjustment. *See, e.g.*, *United States v. Woodard*, 459 F.3d 1078, 1087 (11th Cir. 2006).

First, Howard contends that it was erroneous for the district court, relying on the presentence report, to consider as "relevant conduct" actions beyond those conceded in his guilty plea. He argues this violates his rights under both the Fifth and Sixth Amendments, as well as U.S.S.G. § 1B1.3(b). As he did not object to the consideration of this "relevant conduct" at sentencing, we review for plain error.

The district court did not err. As for the constitutional claims, we have repeatedly rejected this sort of argument in the

past. *See, e.g.*, *United States v. Chau*, 426 F.3d 1318, 1323 (11th Cir. 2005) ("As we have explained, all nine justices [in *Booker*] agreed that the use of extra-verdict enhancements in an advisory guidelines system is not unconstitutional." (citation modified)). As for the guidelines claim, even assuming the 2024 amendment to the Guidelines applies to this case, § 1B1.3(c) only bars "conduct for which the defendant was criminally charged *and acquitted* in federal court." U.S.S.G. § 1B1.3(c) (emphasis added). There was no acquittal here, and therefore no error.

Second, Howard contends that the district court erroneously calculated the loss amount. The district court found that Howard was responsible for approximately $12.6 million in actual loss. Howard doesn't dispute this figure as a starting point for the calculations, but rather contends that the district court should have credited other things (*e.g.*, loans made, value of other fund investments, the value of litigation claims) against this loss to reduce it. Since Howard objected below, we review for clear error. *See Maxwell*, 579 F.3d at 1305.

The district court did not clearly err in calculating the loss amount. Commentary to the Sentencing Guidelines delineates situations in which credits must be applied against losses. This includes the "money returned, and the fair market value of the property returned and the services rendered," before the offense was detected. U.S.S.G. § 2B1.1 cmt. 3(D)(i). "In a case involving a fraudulent investment scheme . . . loss shall not be reduced by the money or the value of the property transferred to any individual

investor in the scheme in excess of that investor's principal investment." *Id.* § 2B1.1 cmt. 3(E)(iv).

The losses here can be broken down into four categories: (1) Losses to investors (former NFL players) associated with The Cambridge Entities; (2) Losses to Preferred Capital (a third-party lender); (3) Losses to Virage Capital (a litigation lender); and (4) Losses to a retired university professor (a real estate investor).

Howard contends that he's entitled to credits in the first three categories. He first claims the district court should have granted him credits in the first category for money paid out to victims including loan balances, medical and travel costs, and the value of the fund's investment in a startup. However, loans granted are not the same thing as money given out—with loans there's an expectation of a return with interest. These loans are also an entirely separate financial transaction from the funds fraudulently raised from investors, and therefore cannot be credited against one another. U.S.S.G. § 2B1.1 cmt. (3)(E)(iv). As for the medical and travel costs, money spent in a fraudulent scheme doesn't become legitimate simply because legitimate businesses incur these expenses. *United States v. Campbell*, 765 F.3d 1291, 1305 (11th Cir. 2014). As these costs helped "perpetuat[e] the scheme," they should not be credited against the loss amount. *Id.* at 1306. Further, the district court did not act unreasonably in determining the value of equity interest in the startup as $0 in light of unsubstantiated sales projections and the absence of any marketable product.

As for the second category, Howard claims that losses to Preferred Capital should be offset by the value of the outstanding principal of the loans, at least for the players who had already received settlements from the NFL. However, the district court did not act unreasonably in valuing these loans at $0. These were high-risk loans and the practical chance of getting anything off these loans, informed by the testimony of Preferred Capital's General Counsel and lead underwriter, was close to zero.

Howard contends that the third category of losses should be offset by the collateral of these loans: the value of the attorneys' fees owed to Howard from the NFL and tobacco settlements. The district court, however, did not clearly err in valuing this collateral at $0. There are a number of practical and legal difficulties with recovering the fees, implicating questions of Howard's disbarment and general misdeeds, as well as plaintiffs changing counsel in the tobacco litigation. It is therefore reasonable to value this collateral at $0.

Howard also argues more generally that he was not the proximate cause of the losses suffered by those within these same three categories. He points to the "complex medical/legal process that derailed [the] NFL claims" as an intervening event. However, we find the district court did not err. Howard's ability to raise money in the first place stemmed from misrepresentations he made about his own operations and the underlying NFL claims. The fact that the some NFL settlement claims came later than expected, and some not at all, doesn't break this causal chain.

Complex medical and legal processes are reasonably foreseeable parts of pursuing settlement. *See United States v. Stein*, 846 F.3d 1135, 1154–55 (11th Cir. 2017).

**B**

We also apply "the familiar abuse-of-discretion standard" when reviewing the substantive reasonableness of a sentence. *Gall v. United States*, 552 U.S. 38, 46 (2007). This standard is a deferential one, and "it is only the rare sentence that will be substantively unreasonable." *United States v. McQueen*, 727 F.3d 1144, 1156 (11th Cir. 2013). "The party challenging the sentence bears the burden of establishing that the sentence is unreasonable in light of both the record and the 3553(a) factors." *United States v. Witt*, 43 F.4th 1188, 1198 (11th Cir. 2022).

For a sentence to be substantively reasonable, the district court must impose a "sentence sufficient, but not greater than necessary, to comply with the purposes set forth" in § 3553(a)(2), which are the need for the sentence to reflect the seriousness of the offense, promote respect for law, provide just punishment, afford adequate deterrence, protect the public, and provide the defendant with needed correctional treatment. 18 U.S.C. § 3553(a)(2). The district court must also consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the types of sentences that are available; (3) the appropriate types of sentences and sentencing range established by the sentencing guidelines; (4) policy statements by the Sentencing Commission; (5) the need to avoid sentencing disparities between similarly

situated defendants; and (6) the need to provide restitution.  *Id.* § 3553(a)(1), (3)-(7).

We consider "the totality of the circumstances" when determining the substantive reasonableness of a sentence.  *United States v. Pugh*, 515 F.3d 1179, 1191 (11th Cir. 2008) (quoting *Gall*, 552 U.S. at 51).  We also "appreciate the institutional advantage that district courts have in applying and weighing the Section 3553(a) factors in individual cases," but "the district court's choice of sentence is not unfettered."  *Id.* at 1190–91.  Although district courts are required to consider all the factors enumerated in § 3553(a), they need not weigh all factors equally.  *United States v. Grushko*, 50 F.4th 1, 19 (11th Cir. 2022).  A court "may give greater weight to some factors over others or even attach great weight to a single factor—a decision that is within its sound discretion."  *Id.*  Further, a "district court does not need to discuss or state each factor explicitly." *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008).  We do not take a court's failure to discuss certain mitigating evidence to mean "that the court erroneously ignored or failed to consider this evidence in determining" a sentence.  *United States v. Amedeo*, 487 F.3d 823, 833 (11th Cir. 2007) (quotation marks omitted).

There are a range of reasonable sentences for a given offense.  *See United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc).  We will vacate a sentence "if, but only if, we 'are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable

sentences dictated by the facts of the case.'" *Id.* (quoting *Pugh*, 515 F.3d at 1191). We may find that a district court has abused its discretion when it "unjustifiably relies on any single § 3553(a) factor, fails to consider pertinent § 3553(a) factors, bases the sentence on impermissible factors, or selects the sentence arbitrarily." *Grushko*, 50 F.4th at 19. But "[a] sentence that suffers from one of these symptoms is not *per se* unreasonable." *Id.* Instead, it is subject to review based on "the totality of the circumstances to determine the sentence's reasonableness." *Id.*

"We ordinarily expect a sentence within the guidelines range to be reasonable." *United States v. Dorsey*, 554 F.3d 958, 962 (11th Cir. 2009). Further, "[a] sentence well below the statutory maximum indicates reasonableness." *United States v. Thomas*, 108 F.4th 1351, 1357 (11th Cir. 2024).

We find Howard's sentence to be substantively reasonable. He argues that he should have received a below-guideline sentence because of mitigating factors like his age, lack of criminal history, and intent to repay all victims. However, the district court did not abuse its discretion in concluding that the seriousness of the fraud, the need for just punishment, and the need for general and specific deterrence outweighed these mitigation factors. Additionally, the sentence of 168 months is well below the statutory maximum of 210 months, indicating reasonableness.

### III

We review the legality of a restitution order de novo, while we review the sentencing court's determination of restitution

value for abuse of discretion. *United States v. Robertson*, 493 F.3d 1322, 1330 (11th Cir. 2007). The factual findings underlying the restitution order are reviewed for clear error. *Id.*

Two principles underpin the awarding of restitution: (1) the purpose of restitution is to make victims whole to the greatest extent possible, rather than to punish the defendant; and (2) the calculation of restitution is not an exact science. *United States v. Martin*, 803 F.3d 581, 594–95 (11th Cir. 2015). The government may thus "provide a reasonable estimate" of the amount owed. *Id.* at 595. A restitution award "must be based on the amount of loss actually caused by the defendant's conduct." *United States v. Foster*, 878 F.3d 1297, 1307 (11th Cir. 2018) (quotation omitted).

The method for calculating actual loss, when calculating the loss amount applicable to a defendant under the Guidelines, is "largely the same as the method for establishing actual loss to identifiable victims." *Stein*, 846 F.3d at 1153 (quotation marks omitted). Consequently, "[i]n most cases, the amount of actual loss under the guidelines will be the same as the restitution figure." *Id.*

Here, the district court did not clearly err in its calculation of the restitution value. The government proved by a preponderance of the evidence that the actual loss amount resulting from Howard's conduct was $12,641,941.06—the amount of the actual loss. The same rationale for denying credits against that loss there applies with equal force here.

**IV**

23-13871                Opinion of the Court                17

When reviewing a forfeiture judgment, we review a district court's findings of fact for clear error and its conclusions of law de novo. *United States v. Esformes*, 60 F.4th 621, 631–32 (11th Cir. 2023).

Forfeiture is part of the criminal penalty against a defendant convicted of RICO charges under 18 U.S.C. § 1962. 18 U.S.C. § 1963(a)(3). Section 1963 provides that an individual convicted of such charges must "forfeit to the United States . . . any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity." *Id.* The government bears the burden of proving by a preponderance of the evidence the elements of criminal forfeiture. *United States v. Dicter*, 198 F.3d 1284, 1289 (11th Cir. 1999).

Here, the district court committed no error in entering a forfeiture money judgment of $10,651,941.40. Howard was in fact convicted of RICO charges under 18 U.S.C. § 1962. The district court's estimate of property derived from racketeering is also reasonable. The government presented the testimony of IRS investigator Justin Wisnakas below, who, by tracing Howard's financial transactions, arrived at this $10.6 million figure. The district court did not clearly err in crediting this testimony.

## V

In sum, we hold that that the district court did not err in accepting Howard's guilty plea and determining that it was made knowingly and voluntarily. It also did not commit any procedural

18                    Opinion of the Court                    23-13871

or substantive errors at sentencing.  Finally, its calculation of and imposition of restitution and forfeiture were reasonable.

**AFFIRMED.**